No, 2,188.

WM. S. CHAPMAN, APPELLANT, *v.* E. L. BUCKMAN, impleaded with J. W. H. PURDY, RESPONDENT.

SCHOOL LANDS. — STATUTORY CONSTRUCTION. — Section 4 of the Act of April 28, 1858, to provide for the location and sale of certain school lands, which provides that the locating agent shall not locate more than three hundred and twenty acres, either directly or indirectly, for any one person, was not amended or repealed so as to abrogate or dispense with such limitation until the Act of March 28, 1868.

IDEM. — Only such portions of prior Acts relating to the same subject, as are repugnant to or are in conflict with its provisions, were superseded or repealed by the Act of April 27, 1863, to provide for the management and sale of the lands belonging to the State.

APPEAL from the District Court of the Seventh District, Mendocino County.

The facts are stated in the opinion.

*George A. Nourse,* for Appellant.

*First*—The Act of April 27, 1863, just cited, was a full and complete revision of all statutes previously enacted, and then existing, relative to the manner of purchasing from the State all the lands of the State therein specified as subject to its provisions.

It is clearly a revisory Act, from the fact that its provisions relate exclusively to matters already treated of by previously existing laws, and are purely a methodical, well digested system concerning matters already legislated upon fully, though in detached statutes ; a mere compacting into one Act of the provisions of law on the same subject-matter previously scattered through different Acts in different volumes of the statutes.

This statute, covering and including all the duties of the locating agents in said matter, contains, it will be seen, no restriction upon the amount of land to be located by the locating agent for any one person.

If this were not a revisory Act, so that whatever was not re-enacted in it would be deemed superseded so far as it related to the same subject-matter, it would not have been necessary to re-enact this restriction which already existed in Section 8 of the Act of April 21, 1858.

The repealing clause at the close of the Act of 1863, does not affect this question. It is a clause frequently used in Acts which are revisory. It was used in at least two statutes of this State which have been judicially pronounced to be in each case a revision of the State Code or system of laws upon the subject-matter thereof.

In *Sacramento* v. *Bird* (15 Cal. 294) the Consolidation Act of the City and County of Sacramento was held by the Supreme Court of this State to be a revision of the laws relative to the government of said city and county, and the compensation of the officers thereof.   Yet that Act repealed by name a long list of then existing Acts, of which the Act decided by the Court to be superseded by the Consolidation Act (on the ground that this last named Act was a revision of former Acts on the same subject) was not one.

So, too, in *The State* v. *Conklin* (19 Cal. 501) the Supreme Court held that the Act relative to auctioneers (p. 352 of Laws of 1859) was a revision of all prior laws relative to the duties and liabilities of auctioneers, and so superseded the former Act imposing a tax of one half per cent. on auctioneers' sales.

*Second*—When a Legislature thus makes a complete revis-

ion of prior statutes and frames a general statute upon the subject-matter, this repeals or supersedes all prior statutes concerning that subject-matter.

"Even if the subsequent statute be not repugnant in all its provisions to a prior one, yet if the later statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original Act." (Sedwick on Cons. and Statute Law, p. 124.)

It is not because Section 4 of the Act of April 23, 1858, is repugnant to or inconsistent with any provision of the Act of April 27, 1863, that we claim it to be now inoperative; it is because the later Act prescribes new rules upon the whole subject-matter of purchasing land from the State that we say that no part of former Acts can be in force since the passage of that Act, which prescribes how or to what extent such lands can be entered. (*Pierpont* v. *Crouch*, 10 Cal. 315 *Rogers* v. *Watrous*, 8 Texas, 62; *Daviess* v. *Fairbairn*, 3 How. U. S. 636; *Sullivan* v. *People*, 15 *Id.* 233; *Leighton* v. *Walker*, 9 N. H. 59; *Dexter & Limerick Plankroad* v. *Allen*, 16 Barb. 18; *Commonwealth* v. *Kimball*, 21 Pick. 376; *Harrison* v. *Walker*, 1 Kelly, 32; Sedgwick on Stat. and Constitutional Law, 124; *Sacramento* v. *Bird*, 15 Cal. 294; *The State* v. *Conkling*, 19 *Id.* 501; *Bartlett* v. *King*, 12 Mass. 544; *Nichols* v. *Squire*, 5 Pick. 168.)

The Statute of 1785 concerning lotteries was held to be repealed by that of 1817, covering the same subject-matter, and imposing a new penalty, although there were no words of repeal, and the two were not repugnant.

In *Commonwealth* v. *Cooley*, (10 Pick, 39), it was held that, "A statute is impliedly repealed by a subsequent one revising the whole subject-matter of the first; and in the case of a statute revising the common law, the implication is at least equally strong." (*Pingree* v. *Snell*, 42 Maine, 53; *Ellis* v. *Paige*, 1 Pick. 43; *Farr* v. *Brackett*, 30 Vt. 344; *Graham* v. *Luckett*, 6 B. Monroe, 154; *Commonwealth* v. *Crowley*, 1 Ashmead, 179; *Illinois and Mich. Canal* v. *Chicago*, 14 Ill. 336; *Pulaski Co.* v. *Downer*, 5 Eng. 588; *Dugan* v. *Gittings*, 3 Gill. 154.)

*Third*—The restriction in the revisory statute of the area

of swamp land to be purchased from the State by any person to six hundred and forty acres, as provided by previous statutes, while the restriction to three hundred and twenty acres of lieu land, so to be entered, was not re-enacted, is conclusive that the last named restriction is to be deemed intentionally omitted, and so repealed.

Where, in a revisory statute, one such restrictive provision is re-enacted, the omission to re-enact the latter is intentional. I presume there is no need to cite authorities in support of the maxim "*expresio unius, exclusio est alterius*."

*W. H. Patterson*, for Respondent.

The Act of April 27, 1863, was amendatory only of previous enactments on the same subject. The question of a repeal by "implication" only remains to be settled; and on this subject the rule which has been adopted universally by the Courts is, that "the earliest Act remains in force unless the two are inconsistent with, and repugnant to each other." (*Bowen* v. *Lease*, 5 Hill, 221; *McCarty* v. *Orphan Asylum*, 9 Cow. 437, 556; *Williams* v. *Potter*, 2 Barb. 320; *Van Rensselaer* v. *Snyder*, 9 *Id.* 808; *People* v. *Durick*, 20 Cal. 94; *Schofield* v. *White*, 7 *Id.* 400; *Crosby* v. *Patch*, 18 *Id.* 438; *People of S. F.* v. *S. J. R. R. Co.* 28 *Id.* 254.)

"If the two Acts may well subsist together, the Courts are bound to uphold the prior law." (*Foster's Case*, 11 Co. 63; *Weston's Case*, Dyer, 347; 10 *Mode. Rep.* Dyer, 118; *Van Renssalear* v. *Snyder*, *ante; Crosby* v. *Patch*, 18 Cal. *ante; People* v. *Durick*, 20 *Id. ante.*)

The Courts, in endeavoring to ascertain the meaning and. intent of the Legislature, are not at liberty to disregard well settled rules of construction, but such intent is to be found in the application of such rules. (*Jackson* v. *Lewis*, 17 John R. 475; *Waterford & Whitehall Turnpike Co.* v. *People*, 9 Barb. 161; *People* v. *N. Y. C. R. R. Co.* 13 N. Y. R. 78.)

All statutes *in pari materia* are to be taken together, as if they were one law. (*Rodgers* v. *Bradshaw*, 20 John. 735; *Rexford* v. *Knight*, 15 Barb. R. 627; *People* v. *Atchinson*, 7 How. P. R. 241; *McMinn* v. *Bliss*, 31 Cal. 122; *Merrill* v. *Gorham*, 6 *Id.* 41; *People* v. *Broadway Wharf Co.* 31 *Id.* 33; *City*

*and County of Sacramento* v. *Bird*, 15 *Id.* 294; Sedgwick on Con. and Stat. Law, 124; *People* v. *Draper*, 15 N. Y. 532, 558.)

SPRAGUE, J., delivered the opinion of the Court, CROCKETT, J., RHODES, C. J., and WALLACE, J., concurring:

This is an action to determine conflicting claims of right between the plaintiff and defendant, Buckman, to purchase from the State lands in lieu of school section sixteen, which had been previously taken by private claim.

The complaint alleges that plaintiff's grantor made application for the lands in controversy on the 21st November, 1867, and on the same day, by deed duly executed, transferred all the applicant's interest therein to plaintiff, and alleges the necessary steps on the part of plaintiff to entitle him to a certificate of the Surveyor General, which would authorize the County Treasurer of Mendocino County to receive payment from plaintiff on said lands, but that the Surveyor General refuse to approve the location in plaintiff's behalf, or to give him the required certificate of purchase; and further alleges that defendant, on the third day of December, 1867, made application to purchase the same lands, and filed with the proper locating agent certain affidavits, which application and affidavits said locating agent forwarded to the Surveyor General, whereupon the Surveyor General entered into the record-book of his office a statement of the case, together with a direction that said parties are referred to the Seventh Judicial District Court, Mendocino County, for a final determination of their conflicting claims or contest for said land.

The answer of defendant denies that the Register or Receiver of the United States Land District in which the lands in controversy are situate, or either of them, accepted the selection of said lands as made by plaintiff's grantor, Purdy; denies that said Purdy, desired to purchase said lands; alleges that plaintiff was desirous of purchasing the same, but being disqualified from so doing by reason of having, before said application in the complaint mentioned, in fact

located in his own name, and indirectly in the name of others, for his benefit, more than three hundred and twenty acres of land within the State of California, under the Acts and law mentioned in plaintiff's complaint; and further avers that the application by plaintiff's grantor, Purdy, for the land, was made at the instance and for the benefit of plaintiff; that plaintiff paid all the expenses of the application, and as soon as the same was made and filed with the affidavits of Purdy, he, Purdy, on the same day, without any consideration, conveyed the lands so applied for by deed to plaintiff; and further, by way of cross complaint, the answer alleges facts showing defendant's right to a certificate of location and purchase of said lands, upon his subsequent application of December 3, 1867, and prays the judgment of the Court that he is so entitled.

To this answer plaintiff demurred on the ground that the new matter and affirmative allegations of the answer do not state facts sufficient to constitute a cause of action in favor of defendant against the plaintiff, nor to entitle defendant to affirmative relief.

The demurrer was overruled, and plaintiff having elected to stand upon his said demurrer, the Court rendered judgment against plaintiff and in favor of defendant.

The question presented by the demurrer is, whether, under the statutes of this State, in force in November, 1867, providing for the sale and regulating the mode of acquiring the title from the State of the sixteenth and thirty-sixth sections of lands donated to the State by the General Government for common school purposes, or lands in lieu thereof, there was any limit to the quantity of such lands authorized to be located or purchased by any one person. The demurrer admits the allegations of the answer, that prior to the application of Purdy for the location and purchase of the lands in controversy, plaintiff had acquired by location in his own name, and indirectly by locations of third persons for his benefit, more than three hundred and twenty acres of land in lieu of the sixteenth and thirty-sixth sections of land donated to the State for school purposes, and that the application of Purdy for the lands in controversy was indirectly

the application of plaintiff; hence, if the laws in force at the time of such application by Purdy, limited the quantity of land authorized to be located and purchased, of this character, by or for the benefit of one person to three hundred and twenty acres, then Purdy's attempted location of the lands in controversy for the benefit of plaintiff was unauthorized and nugatory, and defendant was entitled to an approval of his location of the same lands and to a certificate of purchase of the same by virtue of his subsequent application.

The Act of April 23, 1858 (Statutes 1858, p. 248), provided for the location and sale of the unsold portion of the five hundred thousand acres of lands donated to the State for school purposes, and the seventy-two sections donated to the State for the use of a seminary of learning, provided for the appointment and commission by the Governor of a locating agent for each of the United States land districts of the State, defined his duties, and also provided for the location by such agents of lands in lieu of any sixteenth or thirty-sixth sections or parts of sections appropriated by law to other uses, etc.

The fourth section of this Act reads as follows : "The agent shall not locate more than three hundred and twenty acres, either directly or indirectly, for any one person."

By the Act of April 22, 1861 (Statutes of 1861, p. 218), amendatory of and supplemental to the above Act of April 23, 1858, provision was made for the sale of lands selected in lieu of the sixteenth and thirty-sixth sections of school lands, but no amendment was made to Section 4 of the Act of 1858, limiting the quantity located for any one person to three hundred and twenty acres, nor was this Section 4 amended or directly repealed until the Act of March 28, 1868, several months after both plaintiff and defendant claim to have located the land in controversy. If this Section 4 was in force in November, 1867, when the lands in controversy were attempted to be located by Purdy for the benefit of plaintiff, then his demurrer to defendant's answer was properly overruled, and the judgment must be affirmed. But it is claimed by plaintiff that, although this Section 4, limiting the quantity of land authorized to be located for any one person to

three hundred and twenty acres, was never amended or directly repealed prior to the Act of March 28, 1868, yet it was, with some other sections of the same Act, superseded and amended by the Act of April 27, 1863 (Statutes 1863, p. 591), entitled "An Act to provide for the sale of certain lands belonging to the State." This last Act provides for the sale of "the one hundred and fifty thousand acres of land granted to this State for the use of an Agricultural College, by Act of Congress of July 2, 1862," creates a new State Land Office, and makes the Surveyor General of the State *ex officio* Register of the State Land Office, and defines his duties as such Register. This statute also contains provisions, which to some extent modify and supersede previous statutes providing for the location and sale of the unsold portion of the five hundred thousand acres granted to the State for school purposes; the unsold portion of the seventy-two sections granted to the State for a seminary of learning; the unsold portion of the ten sections granted to the State for the erection of public buildings, and the sixteenth and thirty-sixth sections granted for the use of public schools, or lands in lieu thereof; and the last section repeals all Acts and parts of Acts in conflict with the provisions of said Act.

This Act very clearly was not, nor was it designed to be, a substitute for the entire Act of April 23, 1858, above referred to, or a revision of all previous Acts providing for the location and disposal of the several classes of lands embraced within its terms; hence, only such portions of prior Acts, relating to the same subject, are as repugnant to or in conflict with its provisions, were thereby superseded or repealed. The fourth section of the Act of 1858 limited the quantity of land of the five hundred thousand acre grant, the seventy-two section grant, or lands selected in lieu of the sixteenth and thirty-sixth section grant, authorized to be located either directly or indirectly for any one person to three hundred and twenty acres; and no subsequent statute up to March, 1868, so far as we are at present advised, has changed or modified this limitation, nor in any manner evidenced an intention of the Legislature to abrogate or dispense with the limitation. This

CAL. REP. XXXIX. — 86.

section was in full force and effect in November, 1867, and being so in force, and plaintiff having already located of this character of lands to the full extent of the limit, as alleged by defendant's answer, which is admitted by plaintiff's demurrer thereto, his application to locate the lands in controversy could not have been legally approved.

That the Act of 1863 was not designed as a substitute for the entire Act of April 23, 1858, is clearly manifest from the very terms of the Act of 1863, the second section of which provides that " the money received into the State Treasury from the sale of the one hundred and fifty thousand acres of land granted to this State for the maintenance and support of an Agricultural and Mechanics' Arts College shall be converted into bonds of the civil funded debt of the State, issued since January, A. D. 1858, in the same manner as is provided for converting school money into State bonds by Section 9 of an Act entitled an Act to provide for the location and sale of the unsold portion of the five hundred thousand acres of land donated to this State for school purposes, and the seventy-two sections donated to this State for the use of a seminary of learning, approved April 23, 1858." These portions of the Act of 1858, and the amendments thereto, not in conflict or repugnant to the said Act of 1863, and not modified or clearly superseded by the terms of the latter Act, were left in full force and effect.

Judgment affirmed.

TEMPLE, J., expressed no opinion.